UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI RAZAQI,<br><br>            Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>            Defendant. | No. 1:20-cv-01705-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 22, 23)** |

**I.     Introduction**

Plaintiff Ali Razaqi ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  *See* Docs. 22, 23. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.    Factual and Procedural Background[2]**

On February 20, 2018 Plaintiff applied for disability insurance benefits alleging disability as of April 15, 2014 due to diabetes mellitus, acute necrotizing pancreatitis, recurrent epigastric hernia, depressive disorder, anxiety, and chronic pain syndrome. AR 15, 18. The Commissioner denied the application initially on May 30, 2018, and on reconsideration on August 2, 2018. AR 107–11; 113–19. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on December 19, 2019. AR 33–74. On March 25, 2020 the ALJ issued a decision

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 9 and 13.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions which will be referenced in the course of the analysis below when relevant to the parties' arguments.

1

denying Plaintiff's application. AR 12–32. The Appeals Council denied review on September 28, 2020. AR 1–6. On December 2, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 15, 2014 through his date last insured of June 30, 2019. AR 18. At step two the ALJ found that Plaintiff had the following severe impairments: diabetes mellites, acute necrotizing pancreatitis, recurrent epigastric hernia, and chronic pain syndrome. AR 18. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: hypertension, degenerative changes of the cervical spine (stable grade 1 anterolisthesis of C4 relative to C3), depressive disorder, and anxiety. AR 18–19. The ALJ found these impairments non-severe for one or more reasons, including: 1) that Plaintiff did not list them on his adult function report among the impairments limiting his ability to work, 2) that counsel did not argue the same at the hearing, and, 3) that the record would not support a severity finding as to those impairments notwithstanding the contrary conclusions of the state agency non-examining reviewer on reconsideration who determined that Plaintiff had a severe disorder of muscle, ligament or fascia. AR 18–19. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1. AR 20.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a modified range of medium work as defined in 20 C.F.R. 404.1567(c), with some postural limitations. AR 24–26.

At step four the ALJ concluded that Plaintiff could perform his past relevant work as a home attendant which did not require performance of any activities precluded by the RFC. AR 26. At step five, in reliance on the VE's testimony, the ALJ concluded in the alternative that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: bagger, cleaner II, and kitchen helper. AR 27. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his alleged onset date of April 15, 2014. AR 28.

## V.    **Issues Presented**

Plaintiff asserts two claim of error: 1) that the ALJ failed to provide a clear and convincing reasoning to find him not credible; and, 2) that the ALJ failed to provide any evidence to support the RFC. Br. at 2, Doc. 22.

### A.    **Plaintiff's Testimony**

#### 1.    **Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

The ALJ is responsible for determining credibility,[3]  resolving conflicts in medical

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-

4

testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 25. Accordingly, the

ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

Setting aside Plaintiff's recitation of the applicable law, Plaintiff offers a one-paragraph argument which is predicated on his contention that the ALJ cited only the medical record and treatment notes in rejecting his testimony, this in contravention of established law holding that the lack of medical evidence cannot form the sole basis for discrediting testimony. Br. at 21 (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Plaintiff's argument is unpersuasive.

First, an unadorned critique of the ALJ's reasoning for rejecting his testimony does not establish a freestanding basis for remand. Rather, Plaintiff bears the burden of establishing harmful error. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Here, that burden would involve identifying what testimony he offered which, if credited as true, would establish the existence of limitations additional to, or different from, what the ALJ included in the RFC.

Plaintiff's offers a factual recitation of his testimony followed by an assertion that the ALJ did not offer clear and convincing reasoning for rejecting same. That does not meet Plaintiff's burden. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

Although Plaintiff's summary of the testimony does underscore several significant limitations, that testimony was either: 1) insufficiently specific and not in direct conflict with the RFC; 2) mooted by the ALJ's alternative hypotheticals to the VE; or, 3) rejected by the ALJ for clear and convincing reasons.

In summarizing the applicable testimony regarding his diabetes, Plaintiff's brief states that

his diabetes requires constant blood pressure monitoring and the need to eat "at will."  Br. at 4. Doc. 22.  Plaintiff's summary is an overstatement of the applicable testimony: the testimony on this front was less than clear, but reflects the following facts: 1) he checks his blood sugar at least twice a day; 2) it sometimes gets as low as 40; 3) when it does, he must eat something sugary; 4) it does not return to normal for 2 hours; 5) in the interim he experiences mental confusion, 6) his doctor may have told him to check it more often than twice a day but he does not remember.  AR 51–54.  This does not establish that he constantly monitors his blood pressure and needs to eat at will.  Although the claim of error at issue was the ALJ's rejection of Plaintiff's testimony, the Court also notes the absence of an opinion from Plaintiff's doctor as to the limitations caused by his diabetes.

He also testified that he uses the bathroom frequently.  AR 48.  He explained that the reason for the frequency is to address pancreatic discharge.  AR 49.  When asked to specify the number of times a day, he specified 3 times a day.  AR 49.  The testimony, even if assumed true, does not establish that he uses the bathroom 3 times more often than he otherwise would if he did not suffer from pancreatic disease.  It simply establishes that he uses the bathroom 3 times a day.  The fact that the ALJ posed a hypothetical to the VE regarding a need to use the bathroom 3 times a day *in addition* to regular bathroom breaks does not establish that this was the actual content of his testimony which made no such distinction.  With due regard for the difficulty Plaintiff's pancreatic condition causes him,  the impetus was on counsel to seek additional clarity on that fact.  The Court notes that none of the ALJ's pertinent discussion provides a reason for rejecting his testimony as to the need for bathroom breaks.  Nevertheless, his testimony does not establish a work-preclusive limitation.

Plaintiff also testified that he could be on his feet no more than 1 hour per day, lift no more than 15 pounds, and must lie down 4 hours per day due to constant pain from his intestinal surgery.

AR 44, 47, 56. In these respects the testimony speaks to the existence of more restrictive limitations than the ALJ included in the RFC, thus requiring clear and convincing reasoning for rejecting the same.

Plaintiff contends the ALJ erred in only citing the medical record and treatment notes in rejecting his testimony in contravention of established law holding that the lack of medical evidence cannot form the sole basis for discrediting testimony. Br. at 21 (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Plaintiff misconstrues the applicable law. An ALJ may not rely solely on *objective medical evidence* in rejecting pain testimony. 20 C.F.R. § 404.1529(c)(2). Objective medical evidence is not a catchall category that includes all facts ascertained from the medical records. Rather, the regulations draw a distinction between objective medical evidence and "other" evidence. "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Id.* "Other" evidence includes, for example, a claimant's treatment regimen and statements regarding the efficacy thereof. 20 C.F.R. § 404.1529(c)(3). In short, the fact that an ALJ relies exclusively on information ascertained from medical records does not mean the ALJ relied solely on "objective evidence."

Here, the ALJ also cited "other" evidence in rejecting his testimony. The ALJ noted that, following his November 2014 colostomy takedown and fistula repair, he was advised that most patients are discouraged from driving or lifting more than 10 pounds for the first month, but there was nothing in the record indicating he was given restrictions extending beyond that. AR 22. Upon his discharge from post operative monitoring at Stanford Hospital in January 2016, Plaintiff was ambulating well with minimal assistance reporting that he was "exercising by walking and that his condition had not limited any of his activities." AR 22. The ALJ summarized additional evidence from the ensuing 2 years reflecting additional hospital and doctor's office visits for various

purposes including ventral hernia repair, diabetes management, and emergency care following two different car accidents. He denied abdominal pain in March 2018, but reported it the following month. AR 24. He denied abdominal pain in December 2018, and denied it January 2019 following his car accident. *Id.* He presented to the emergency department again on April 15, 2019 with left low quadrant pain for several days and was diagnosed with retroperitoneal fluid collection. AR 25.

Ultimately, the ALJ concluded that these records (in addition to the objective findings reflected therein), "do not reflect the level of pain that the claimant testified to at the hearing, i.e. pain that would cause a person to be incapacitated for four hours out of a day or to be unable to lift more than 15 pounds." AR 25.

The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity. No inferential leaps are required to find the ALJ's reasoning clear and convincing. As summarized above, the record reflects Plaintiff variously presenting with abdominal pain but equally as frequently (if not more so) denying the same. This does not support his testimony that his abdominal pain was unabating and sufficiently debilitating that he would be incapacitated 4 hours per day and unable to lift more than 15 pounds. Moreover, insofar as the 15 pound weight restriction purportedly came from his doctor, the ALJ properly noted the absence of anything beyond a 10-pound weight restriction which applied for 1 month following his November 2014 colostomy takedown and fistular repair. AR 22. The ALJ's reasoning was clear and convincing.

It is worth noting again that pain was not the sole factor purportedly limiting Plaintiff. He also testified to mental confusion attributable to his blood sugar dropping to 40, and he reported the need for frequent bathroom breaks attributable to his pancreatic disease. The ALJ did not specifically indicate she was rejecting this testimony, nor does her broader discussion of the medical evidence appear to identify facts that would justify doing so.

Nevertheless, as explained above, Plaintiff's testimony about these limitations was not in direct conflict with the RFC. Although Plaintiff contends on appeal that he testified he requires constant blood pressure monitoring and the need to eat at will, his testimony actually reflected that he checked it twice daily and that it would not always be as low as 40, but would sometimes be at 50 or 60. AR 53–54. Counsel for Plaintiff did not seek sufficient clarity regarding the extent to which the task of monitoring his blood pressure and eating in response to dangerously low readings would interfere with his ability to perform work activities. Nor did counsel seek sufficiently clarity on how frequently he experiences mental confusion attributable to his low blood sugar (a fact which could have been established independently of the issues concerning the frequency of his blood pressure testing and the frequency of the dangerously low readings, though the questioning at the hearing focused on these two issues at the expense of the issue concerning his resultant mental confusion). Additionally, he testified that his pancreatic condition requires 3 bathroom visits daily. He did not indicate whether these visits were in addition to regular bathroom visits, nor did counsel seek clarification on that point. AR 49.

Based on the testimony Plaintiff specifical underscores and the ALJ's pertinent discussion concerning the same, no harmful error was committed here.

### B.       Substantial Evidence Supporting the RFC

The non-examining state agency DDS physicians found that Plaintiff had severe physical impairments, but that there was insufficient evidence for full evaluation of his claim. The ALJ rejected these opinions noting that "the medical record is nearly 3,000 pages and more than sufficient to evaluate this claim." AR 25. Plaintiff contends that because the ALJ's assessed RFC was not based on a medical opinion, she impermissibly played doctor and formulated her own RFC in reliance on her lay interpretation of the medical data rather than further developing the record with a consultative examination. Br. at 9–12.

Plaintiff's argument lacks a basis for remand. The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3). The ALJ's duty to further develop the record is triggered only where the evidence is ambiguous or inadequate to allow for proper evaluation of the evidence. 20 C.F.R. §404.1527(c)(3); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff offers no reason to believe the record was inadequate to allow for proper evaluation. As the ALJ noted, it contains over 3,000 pages of medical and other evidence.

As to the existence of ambiguity, the absence of a medical opinion from a physician who considered all medical records (whether pre-dating or post dating the initial and reconsideration determinations) does not itself create ambiguity. If that were true, a consultative examination would be required in essentially every case, yet the regulations provide that a consultative examination "may" be purchased by the agency, not that it must be purchased in every case. 20 C.F.R. § 404.1519a. Simply put, there is always an unavoidable gap of time between the initial/reconsideration determinations and the ALJ's subsequent decision. In the interim, claimants routinely continue their course of care, generate new medical records, and submit the same to the ALJ for review.

In other words, an ALJ is almost always tasked with performing some independent review the medical evidence that was never considered by one of the state agency's DDS physicians, and thereafter translating the same into an RFC. The Ninth Circuit has acknowledged that this is indeed the ALJ's role. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015), ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Here, the ALJ appears to have performed an unusually great deal of independent review of medical evidence, which certainly raises potential concerns and is likely not an ideal practice to facilitate an accurate and thorough assessment of Plaintiff's limitations. Nevertheless, there is no

precedent holding that this establishes ambiguity as a matter of law. The existence of ambiguity is a fact specific inquiry and would require at least some good faith effort by Plaintiff to canvass the medical records and identify some pertinent records that either: 1) the ALJ misconstrued; 2) the ALJ overlooked; or, 3) that were beyond the scope of an ALJ"s expertise to independently review. Plaintiff offers no such discussion. Plaintiff does not acknowledge or dispute the comprehensiveness and accuracy of the ALJ's recitation of the medical evidence or the inferences the ALJ derived therefrom. The subsection of Plaintiff's statement of facts labelled "summary of relevant medical evidence" states that such evidence "will be presented as it becomes pertinent in the argument section." Br. at 3. However, the argument section has no citations or references to the 3,000 pages of medical records.

The Court acknowledges that reviewing the same is an unenviable task, but it nevertheless was counsel's task to perform. The Court has no independent obligation to search for evidence that would undermine the ALJ's conclusion, or create ambiguity requiring a consultative examination. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . .) (citation omitted).

In sum, Plaintiff's argument is wholly predicated on the notion that ambiguity exists here as a matter of law because the state agency DDS physicians found the record inadequate for review and the ALJ independently formulated an RFC without ordering a consultative examination. Plaintiff identifies no controlling or persuasive authority directly supporting that proposition, and the Court finds that statement generally inconsistent with the applicable law as set forth above.

**VI.     Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from

the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Ali Razaqi.

IT IS SO ORDERED.

Dated: __**May 6, 2022**__                        __/s/ Gary S. Austin__
                                                            UNITED STATES MAGISTRATE JUDGE